Abraham Slifka v. Commissioner. Irving Slifka v. Commissioner.
Slifka v. Commissioner
Docket Nos. 17555, 17556.
United States Tax Court
1949 Tax Ct. Memo LEXIS 195; 8 T.C.M. (CCH) 431; T.C.M. (RIA) 49103; May 6, 1949
*195 Abraham Slifka and Irving Slifka, pro se. William F. Evans, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion In these proceedings, consolidated for hearing and opinion, respondent determined deficiencies in income and victory taxes for 1943, as follows: Petitioner
Docket No.
Amount
Abraham Slifka
17555
$19,183.57
Irving Slifka
17556
14,424.33 That part of those deficiencies is here in issue which results from respondent's determination that the income of the partnership M. Slifka & Sons, was the income of petitioners and one Lewis Slifka, rather than the income of petitioners, Lewis Slifka, Belle Slifka, Evelyn Dilloff, Ruth Perlman and Eleanor Slifka, the last four named being members of the families of petitioners. Findings of Fact Prior to the taxable year 1943, petitioners Abraham and Irving Slifka were doing business in New York City as partners under the firm name of M. Slifka & Sons, engaged in the manufacture and sale of men's belts, suspenders, garters and small leather goods. This partnership had existed for about 23 years. The business had been started by their father, Morris Slifka, about 1895. In *196 1922 the father and the two sons formed a partnership to carry on the business, which was thereafter known as M. Slifka & Sons. The father retired shortly afterwards leaving the two sons as equal partners. The business was capitalized at about $200,000. The partners rented space in a building but owned their own machinery consisting of about 30 sewing machines, about 25 pressers, and other assorted fixtures and tables. The business occupied about 30,000 feet of floor space. The inventory consisted mostly of leather, webbings, buckles, piece goods, rivets and painting material. In 1943 one of the two brothers managed the belt department and the other the suspender department. On or about the 19th of April, 1943, the brothers, Abraham and Irving Slifka, entered into an agreement with Eleanor Slifka, wife of Irving Slifka, and Lewis Slifka, Evelyn Dilloff and Ruth Perlman, children of Irving and Belle Slifka, purporting to establish a new partnership to do business under the same name as formerly, to wit: M. Slifka & Sons. This was done pursuant to repeated suggestions of a certified public accountant who was a business advisor of petitioners. Under the third paragraph of the agreement *197 it was provided that Irving Slifka and Abraham Slifka should contribute all of the properties, inventories, contracts and other assets, tangible and intangible, of the old partnership, subject to existing liabilities, as such assets and liabilities appeared at the close of business April 17, 1943, on the books of the partnership. It was also agreed that the assets exclusive of good will, trade names, trade marks and other intangible assets had a net value as of that date of $420,488.31. It was further agreed that the new partners should contribute cash as follows: Eleanor Slifka
$50,000.00
Belle Slifka
12,500.00
Lewis Slifka
12,500.00
Evelyn Dilloff
12,500.00
Ruth Perlman
12,500.00 and upon these contributions being received the interests of each of the parties in the profits and losses of the partnership should be as follows: Irving Slifka
37 1/2%
Abraham Slifka
37 1/2%
Eleanor Slifka
12 1/2%
Belle Slifka
3 1/8%
Lewis Slifka
3 1/8%
Evelyn Dilloff
3 1/8%
Ruth Perlman
3 1/8%
The earnings distributable under the agreement of April 19, 1943, to the alleged new partners were, in the main, added to their capital accounts, while the *198 earnings distributable to the petitioners were, to a great extent, withdrawn. On January 31, 1946, the capital accounts of the partners appearing on the books of the alleged partnership were as follows: Irving Slifka
$140,458.50
Abraham Slifka
128,398.70
Lewis Slifka
27,968.42
Belle Slifka
31,806.03
Eleanor Slifka
130,478.27
Ruth Perlman
32,323.44
Evelyn Dilloff
29.994.97
Just prior to the agreement of April 19, 1943, the assets of the partnership amounted to $691,551.16, and among the assets was cash in bank in the amount of $131,161.59. On April 19, 1943, just after the formation of the purported new partnership, the assets of the partnership were exactly the same, including the $131,161.59 cash in bank; also, the liabilities of the partnership just before and after the agreement were the same, to wit: $171,062.35. When the agreement of April 19, 1943, was entered into, Abraham Slifka drew a check upon the partnership account then existing, payable to himself, in the sum of $50,000, which he deposited to his personal bank accounts. He then drew his personal check, payable to his wife, Eleanor Slifka, in the sum of $50,000, who thereupon endorsed *199 it back to M. Slifka & Sons, and this was the contribution of Eleanor Slifka to the alleged new partnership. At the same time Irving Slifka drew a check on the partnership funds, to his order, in the sum of $50,000 and deposited this check in his own personal bank account. Thereupon he drew four checks of $12,500 each, payable to Belle Slifka, Lewis Slifka, Evelyn Dilloff and Ruth Perlman, and each of those parties endorsed his or her check to M. Slifka & Sons, and M. Slifka & Sons deposited the checks to its own bank account. Thus M. Slifka & Sons, on April 19, 1943, before the issuance of the checks to petitioners, had $131,161.59 cash in bank, and immediately after the transactions detailed above the bank account of the alleged new partnership contained the same amount of $131,161.59. Under the terms of the agreement of April 19, 1943, only Irving Slifka and Abraham Slifka were authorized to draw checks upon the bank account, or accounts of the alleged new partnership, and they only were authorized to execute, make or deliver and accept and endorse any commercial paper in connection with the business of the partnership. Under paragraph 6 of the agreement, the general management *200 of the partnership business was vested in Irving Slifka and Abraham Slifka. Under paragraph 9 of the agreement Irving Slifka and Abraham Slifka were to be paid salaries each of $15,000 per annum, and Lewis Slifka was paid a salary of $5,200 per annum. It was also provided in the agreement that none of the partners could assign, mortgage or sell his share in the partnership or in its capital or profit, or enter into any agreement by which any other person, firm or corporation could acquire an interest in the partnership, except with the consent of all the parties. It was also provided by paragraph 16 of the agreement that upon the retirement of a partner a new partnership should be formed under the terms and conditions of the agreement, consisting of the remaining partners, either alone, or together, with such other partner or partners as they might desire to admit and, by paragraph 12 (a) and (b), it was provided that the original partners, Irving Slifka and Abraham Slifka, could each acquire the interest of any retiring partner of his immediate family, so that the family interests of the said original partners would remain equally proportionate. It was further provided in paragraph *201 19 (a) that, in the event of the retirement of Abraham Slifka from the partnership, Irving Slifka should have the right to exclude Eleanor Slifka, the wife of Abraham Slifka, from any new partnership formed thereafter in accordance with the terms of the agreement and, by paragraph 19 (b), it was provided that in the event of the retirement of Irving Slifka from the partnership, Abraham Slifka would have the right to exclude Belle Slifka, the wife of Irving Slifka, and exclude Lewis Slfka, Evelyn Dilloff and Ruth Perlman, or any one of them, from any new partnership formed in accordance with the provisions of paragraph 16. It was further provided by paragraph 30 of the agreement that certain life insurance policies therein named ostensibly carried by the former partnership should still remain the property of Irving Slifka and Abraham Slifka, and future premiums to fall due on said policies were to be paid by the new partnership but charged to individual accounts of Irving Slifka and Abraham Slifka. There was no change in the manner of carrying on the business after the execution of the agreement of April 19, 1943. The two brothers, Irving and Abraham Slifka, still directed the affairs *202 of the partnership. None of the new members contributed any services, except Lewis Slifka, who was paid a salary of $5,200 per year. It was provided in the agreement, paragraph 9, that any one of the partners who should devote all or a part of his time to the business should be paid reasonable compensation; and no compensation was paid to Eleanor Slifka, Belle Slifka, Evelyn Dilloff, or Ruth Perlman. The partnership of M. Slifka & Sons needed no new capital at the time of the agreement of April 19, 1943, and acquired none. The capital contribution to the alleged new partnership for the shares of the new members was derived from Abraham and Irving Slifka, in the amount of $50,000 each, who, in turn, each had withdrawn the respective amounts from the funds of the old partnership. Eleanor Slifka, Belle Slifka, Evelyn Dilloff and Ruth Perlman, made no contributions of capital originating with them to the alleged new partnership and rendered no services thereto of a vital nature. Opinion KERN, Judge: Upon the facts disclosed by the record herein the conclusion is inescapable that Eleanor Slifka, Belle Slifka, Evelyn Dilloff and Ruth Perlman were not, in reality, and for tax purposes, *203 partners in the business carried on. They did not contribute to the earning of its income either services or capital originating with them. Nothing in the record persuades us that respondent erred in determining that none of the income of the business was taxable to them and that the income which, by the arrangement of the parties, was formally put into their accounts on the books of the alleged partnership, was in reality the income of, and taxable to petitioners. Petitioners' principal argument is that the reality of the partnership arrangement is demonstrated by the fact that the distributions to the accounts of petitioners' wives and the daughters of one of the petitioners were permitted to accumulate, and in spite of such accumulations and the withdrawals by petitioners, the percentage of distributions provided in the agreement of April 9, 19413, remained the same. This contention is without merit. This being the sole issue raised by the petitions herein, Decision will be entered for respondent.